# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

UNITED STATES OF AMERICA,    )
         )
    Plaintiff,    )
         )
v.    )    No. 09-20396
         )
UNDRA WILLIAMS,    )
         )
    Defendant.    )

## ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING DEFENDANT'S MOTION TO SUPPRESS

Before the Court is Defendant Undra Williams' ("Williams") February 25, 2011 Motion to Suppress and Williams' August 25, 2011 Objections to the Report and Recommendation of the Magistrate Judge. (Def.'s Mot. to Suppress, ECF No. 66 ("Mot."); Def.'s Objections to Report and Recommendations, ECF No. 100.[1]) Plaintiff the United States of America (the "Government") has not responded to Williams' objections. The Magistrate Judge recommended that the Court deny Williams' Motion to Suppress. (See Report and Recommendation, ECF No. 97.) ("Report") Williams' objections are OVERRULED, the

---

[1] Williams originally filed his Objections to the Report and Recommendation on August 21, 2011. (Def.'s Objections to Report and Recommendations, ECF No. 98.) After receiving a notice that the filing did not comply with this Court's electronic submissions policy, he filed a corrected version on August 25, 2011. (Def.'s Objections to Report and Recommendations, ECF No. 100.) The objections are substantively identical.

Magistrate Judge's Report is ADOPTED, and the Motion to Suppress is DENIED.

**I.    Background**

On September 30, 2009, the grand jury returned an indictment charging Williams with one count of possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g).  (Indictment, ECF No. 2.)  On February 25, 2011, Williams filed a motion to suppress the firearm found on his person when he was arrested.  (See Mot.)  On February 28, 2011, the Court referred Williams' motion to the Magistrate Judge for a Report and Recommendation.  (Order of Reference, ECF No. 67.)  On May 31, 2011, the Government responded to Williams' motion to suppress.  (Mem. and Authorities in Government's Resp. to Def.'s Mot. to Suppress, ECF No. 85.)

On June 22, 2011, the Magistrate Judge held a hearing on the motion, at which Sergeant Joseph Johnson ("Johnson") and Officer Frank Amato ("Amato") of the Memphis Police Department ("MPD") and Walter Lee Chalmers ("Chalmers") testified for the Government, and Williams testified in his own defense.  (Mins, ECF No. 91; Report 1.)  The Magistrate Judge found as follows.

At approximately 1:00 a.m. on May 23, 2009, Johnson was patrolling the parking lot of Club Senses, a nightclub in Memphis that had reported a number of recent vehicle break-ins, when he observed a vehicle backed into a parking space near a

trash dumpster, far from the club's entrance. (Report 2.) The vehicle had its headlights on, and two black males, later identified as Chalmers and Williams, were sitting in the driver's seat and front passenger seat, respectively. (Id. 2-3.) Johnson pulled past the front of the vehicle and stopped his patrol car at an angle ninety degrees to the vehicle, without blocking it. (Id. at 3.) Johnson had turned on his patrol car's side lights, or "alley" lights, but not its blue lights or siren. (Id.) Johnson got out of his patrol car and approached the driver's side of the vehicle. (Id.)

As Johnson approached, he noticed that the two men were "shuffling around" and appeared to be "moving stuff" on the front floorboard. (Id.) He also noticed that they were wearing T-shirts and jeans, rather than attire that one might wear to a nightclub, and that they appeared "unkempt." (Id.) As Johnson engaged the men in conversation, he shined his flashlight into the vehicle and saw DVD monitors and stereo equipment on the floorboard on the front passenger side. (Id.) Johnson was aware that similar items had been stolen from vehicles in the nightclub's parking lot. (Id. at 3-4.)

Johnson called in the vehicle's license plate number and, when he learned that it had expired and belonged to a different vehicle, asked Chalmers for his driver's license. (Id. at 4.) When Chalmers responded that it had been suspended, Johnson

3

asked him to exit the vehicle. (Id.) When Chalmers opened the door, Johnson noticed a pair of gloves, flashlight, and screwdriver near the driver's seat, which Johnson knew were tools commonly used to burglarize vehicles. (Id.)

Johnson called for assistance, and Amato arrived on the scene. (Id.) After Amato had Williams exit the vehicle, Amato frisked him, finding a screwdriver in his pants pocket. (Id.) The officers placed Chalmers and Williams in separate patrol cars to continue their investigation. (Id. at 4-5.) Johnson, Amato, and other officers who had arrived drove around the parking lot and discovered that several vehicles had been burglarized. (Id. at 5.) The officers ran the license plate numbers of those vehicles to identify their owners and locate them in the nightclub. (Id.) The owners told the officers that the damage to their vehicles was new, and one owner identified the DVD monitors as missing from his vehicle. (Id.)

On returning to his patrol car, Amato saw Williams moving around in the back seat and opened the back door. (Id.) Amato spotted a handgun on the floorboard near Williams' feet, removed Williams from the car, and seized the gun. (Id.) Amato then searched Williams' person and discovered several bullets in his pants pocket. (Id.)

Based on these facts, the Magistrate Judge concluded that the officers did not violate Williams' Fourth Amendment rights.

(See id. at 6-14.)  Williams has filed timely objections.  (See Objections.)

## II.  Standard of Review

"It is well-settled that upon proper objection by a party, a district court must review de novo a magistrate judge's ruling on a motion to suppress."  United States v. Quinney, 238 F. App'x 150, 152 (6th Cir. 2007) (citations omitted).  "A district judge must determine de novo any part of a magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).  After reviewing the evidence, the court is free to accept, reject, or modify the proposed findings or recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).  The district court is not required to review—under a de novo or any other standard—those aspects of the report and recommendation to which no specific objection is made.  Thomas v. Arn, 474 U.S. 140, 150 (1985).  The district court should adopt the findings and rulings of the magistrate judge to which no specific objection is filed. Id. at 151.

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues."  United States v. Bermudez, 228 F.3d 424, 2000 WL 1871676, at *3 (6th Cir. Dec. 11, 2000) (citing United States v. Raddatz, 447 U.S. 667, 675–

5

76, (1980)). "When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." <u>United States v. Robinson</u>, No. 1:07-CR-1, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007) (citations omitted). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." <u>Id.</u> (citations omitted).

### III. Analysis

Johnson objects to two findings of fact, the relative position of the vehicles and the timing of the prior break-ins. He also objects to the legal conclusion that Johnson's encounter with Chalmers and Williams was, initially, consensual. (<u>See</u> Objections.)

#### A. Findings of Fact

##### 1. Relative Position of the Vehicles

Williams objects to the Magistrate Judge's finding about the relative position of Johnson's patrol car and the vehicle Chalmers and Williams occupied ("Chalmers' vehicle"). (<u>See</u> Objections ¶¶ 1-2, 6-7.) Williams argues that the Magistrate

Judge misinterpreted Amato's testimony, inappropriately relied on Chalmers' testimony, and gave insufficient weight to a portion of Johnson's testimony.  (See id. ¶¶ 1-2, 6-7.)

In concluding that Johnson's patrol car did not block Chalmers' vehicle, the Magistrate Judge relied on the testimony of Amato and Chalmers.  (See Report 3 n.2.)  The Magistrate Judge explained:

> Although Sergeant Johnson did not recall exactly how far his patrol car was parked in front of the parked vehicle, Officer Amato testified that when he arrived on the scene, Sergeant Johnson's vehicle was parked at an "L" angle to the parked vehicle and that Sergeant Johnson's vehicle was not blocking the parked vehicle. Similarly, Chalmers testified that Sergeant Johnson's vehicle was not blocking his vehicle and that he (Chalmers) "could have pulled off if [he] wanted."

(Id.)

Having conducted a de novo review of the record based on Williams' objections, the Magistrate Judge's finding about the relative position of the vehicles is correct.  Williams and Chalmers corroborated each other's testimony about the relative position of the vehicles on direct and cross examination. Specifically, both testified that Johnson's patrol car did not block Chalmers' vehicle.  (See Suppression Hr'g Tr. 102:17-23, 108:12-109:3, 126:16-22, 132:11-133:16; 153:5-6, 155:7-17, 161:22-163:12, June 11, 2011.)  ("Tr.")

Williams argues that Amato's testimony that the vehicles were in the shape of the letter "L" "reveals that the vehicles

were adjacent to each other and at a minimum abutted each other at some portion of the vehicles." (Objections ¶ 1.) Although Amato compared the position of the vehicles to the shape of an "L," he also testified definitively that Johnson's patrol car had not blocked Chalmers' vehicle and that the patrol car was "off to the side." (See Suppression Hr'g Tr. 102:17-23, 108:12-109:3 June 11, 2011.) That Amato compared the relative position of the vehicles to an "L" does not undermine his testimony that Chalmers' vehicle was not blocked in its parking space.[2]

Williams argues that Chalmers was not a credible witness because he is a convicted felon, he gave an initially false statement to police about the May 23, 2009 incident, and the Magistrate Judge found his testimony not credible on other matters. (Id. ¶¶ 2, 7.) The only portion of Chalmers' testimony on which the Magistrate Judge relies is his testimony about the relative position of the vehicles. (See Report 2.) On that point, Chalmers testified consistently on both direct and cross examination. (See 126:16-22, 132:11-133:16; 153:5-6, 155:7-17, 161:22-163:12.) On that point, the record demonstrates that he was credible, even considering his prior convictions and initially false statement to police and that other parts of his testimony were discounted. See Bermudez,

---

[2] Chalmers' testimony also supports this finding. Williams' counsel asked him, "So you know how the bottom of the 'L' looks like it sits on the line . . . was it like that?" Chalmers responded, "No, sir." (Tr. 163:8-13.)

2000 WL 1871676, at *3; <u>Robinson</u>, 2007 WL 2138635, at *1. Despite significant questioning about what Williams' counsel called "subtle bias," nothing in the record demonstrates that Chalmers was interested or biased. (<u>See</u> Tr. 136:15-150:21, 164:22-165:2.)

Williams urges the Court to give weight to Johnson's testimony "that he had to walk around or between the vehicles in a certain type of way to arrive at the driver's side of Chalmers' vehicle." (Objections ¶ 6.) Johnson testified that, after he parked his patrol car, he had to "walk[] pas[t] the front of" Chalmers' vehicle and that he "walked around the back of [his] car and . . . passed the front of" Chalmers' vehicle. (<u>See</u> Tr. 56:12-58:17.) However, he also testified that he did not know how much, if any, the back end of his patrol car overlapped with the front end of Chalmers' vehicle. (<u>See</u> <u>id.</u>) Because Johnson admitted he did not recall the relative position of the vehicles very well, his ambiguous testimony that he "walked across" the front of Chalmers' vehicle does not undermine the finding that Chalmers' vehicle was not blocked in its parking space by Johnson's patrol car. (<u>See</u> <u>id.</u> 56:12-19, 57:22-58:3.)

Having reviewed the record, the Court finds that Chalmers' vehicle was not blocked by Johnson's patrol car when he stopped

to approach Chalmers and Williams.  Williams' objection to that finding is not well-taken.

## 2. Timing of the Prior Break-ins

Williams objects to the Magistrate Judge's finding that, before May 23, 2009, there had been "recent" vehicle break-ins at the nightclub.  (Objections ¶ 3.)  Williams argues that the record only supports a finding that there had been "prior break-ins at the club" and notes that there had been "no reports that particular evening of any automobile burglaries."  (Id.)

The Magistrate Judge did not find that there had been reports about vehicle break-ins on May 23, 2009, only that the officers were patrolling the parking lot in response to "recent reports of vehicle break-ins at the club."  (Report 2.)  When asked if, "prior to May 23, 2009, there had been a lot of automobile break-ins on the Club Senses lot," Johnson responded in the affirmative.  (Tr. 14:7-10; see also id. 95:21-24.)  That the MPD had dispatched a detail to patrol the nightclub parking lot in response to those break-ins supports the finding that the prior break-ins were recent.  (See id. 14:2-20.)  Having reviewed the record, Court finds that the vehicle break-ins were recent.  Williams' objection to that finding is not well-taken.

Having reviewed the record de novo, Williams' specific objections to the Magistrate Judge's findings of facts are not well-taken.  These findings are ADOPTED.

## B. Conclusion of Law

Williams objects to the Magistrate Judge's conclusion that, when Johnson initially approached Chalmers' vehicle, the encounter between Johnson, Chalmers, and Williams was consensual. (See Objections ¶¶ 4-5.) "Police and citizens may have three types of permissible encounters: (1) the consensual encounter, which may be initiated without any objective level of suspicion; (2) the investigative detention, which, if non-consensual, must be supported by a reasonable, articulable suspicion of criminal activity; and (3) the arrest, valid only if supported by probable cause." United States v. Davis, 514 F.3d 596, 607 (6th Cir. 2008) (internal quotation marks and citation omitted). "In the first type of encounter, law enforcement officers may ask citizens general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave." Id. (internal quotation marks and citations omitted).

A consensual encounter becomes a seizure if, under all the circumstances, a reasonable person would have believed that he was not free to leave. See United States v. Williams, 615 F.3d 657, 663 (6th Cir. 2010) ("[I]n order to determine whether a particular encounter constitutes a seizure, a court must

11

consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (citation omitted)); United States v. See, 574 F.3d 309, 313 (6th Cir. 2009) ("We have explained that '[a] consensual encounter can ripen into a seizure if in light of all of the circumstances, [ ] a reasonable person [would] have believed that he or she was not free to walk away.'" (citation omitted)). Courts consider the following factors as evidence that a seizure has occurred: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Williams, 615 F.3d at 663 (internal quotation marks and citations omitted).

None of the factors articulated in Williams was present when Johnson initially approached Chalmers' vehicle. See 615 F.3d at 663. As Johnson approached, he was the only officer on the scene, and his weapon remained in its holster. (See Tr. 18:10-18, 95:25-96:5, 126:23-127:8; see also Report 3.) After reaching Chalmers' vehicle, Johnson engaged Chalmers and Williams in casual conversation. (See Tr. 18:24-19:2, 63:24-64:4, 157:20-158:8.) Johnson did not make any requests of

Chalmers or Williams until he had observed Chalmers and Williams' "shuffling around" in the vehicle, their "unkempt" appearance, and the DVD monitors and stereo equipment on the passenger floorboard.[3] (See, e.g., id. 82:1-12, 83:20-85:22; Report 3-4.)

Williams correctly argues that the Court of Appeals has concluded that an officer's using his marked patrol car to block a defendant's vehicle in its parking space, while the defendant is inside the vehicle, constitutes a seizure because a reasonable person would not feel free to leave. See United States v. Gross, 624 F.3d 309, 315-16 (6th Cir. 2010); See, 574 F.3d at 313 (citations omitted). Unlike the officers in Gross and See, Johnson did not park his patrol car so that it blocked Chalmers' vehicle. See Gross, 624 F.3d at 315-316; See, 574 F.3d at 313. Although Johnson did not park his patrol car "alongside" Chalmers' vehicle, as Judge Gilman suggested would be appropriate in his concurrence in See, Johnson avoided blocking Chalmers' vehicle so that he was able to conduct his investigation in a consensual manner. See See, 574 F.3d at 313 (Gilman, J., concurring).

Williams argues that a seizure occurred when Johnson parked his patrol car near Chalmers' vehicle because the alley lights

---

[3] Williams does not object to the Magistrate Judge's conclusions that, once Johnson had asked for Chalmers' license, Chalmers and Williams were seized and that Johnson had a reasonable suspicion for that seizure. (See Report 9-11.)

on Johnson's patrol car were shining in Williams' eyes, which would have made a reasonable person feel he was not free to leave. (See Objections ¶ 4.) Although Johnson's alley lights were on, he did not turn them on in reaction to seeing Chalmers' vehicle; Johnson had previously turned on his alley lights to allow him to see damage to vehicles as he patrolled the parking lot. (See Tr. 59:18-60:24, 63:13-23.) Even assuming that the lights were shining directly in Williams' eyes,[4] considering all of the circumstances, Johnson's use of his alley lights in this context would not have led a reasonable person to believe that he was not free to leave. See Williams, 615 F.3d at 663.

Williams argues that Johnson testified that his suspicion had been aroused by Williams and Chalmers' sitting in the vehicle before he approached and that, if they had driven off after he stopped his patrol car, he would have become even more suspicious. (See Objections ¶ 5.) Johnson testified that he thought Chalmers' vehicle was suspicious before he approached it. (Tr. 70:11-71:12.) He also testified that he wanted to talk with the vehicle occupants and that he did not know what he would have done if the vehicle had left as he approached. (See, e.g., id. 86:21-90:5.) "Whether an encounter between a police officer and a citizen is consensual depends on the officer's

---

[4] Only Williams testified that the lights were shining directly in his face, and Williams' testimony was not credible. (See Tr. 172:10-20; see Report 2.)

objective behavior, not on any subjective suspicion of criminal activity." <u>Davis</u>, 514 F.3d at 607 (citation omitted). Johnson's subjective motives and opinions do not determine whether his encounter with Chalmers and Williams was consensual.

Considering all of the circumstances, the record demonstrates that Johnson's initial encounter with Chalmers and Williams was consensual. <u>See</u> <u>Williams</u>, 615 F.3d at 663. Williams' objection to that conclusion by the Magistrate Judge is not well-taken. Williams has not specifically objected to the Magistrate Judge's other conclusions of law. They are ADOPTED.

## IV. Conclusion

Based on the foregoing, Williams' objections are OVERRULED. The Magistrate Judge's Report and Recommendation is ADOPTED, and Williams' Motion to Suppress is DENIED.

So ordered this 6th day of September, 2011.


s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE